NOT FOR PUBLICATION
File Name: 08a0181n.06
Filed: April 4, 2008

NO. 07-1458

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

CAIN RESTAURANT COMPANY,

        Plaintiff-Appellant,

v.

CARROLS CORPORATION,

        Defendant-Appellee.

                                    /

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

BEFORE:    SUHRHEINRICH, SUTTON, and GRIFFIN, Circuit Judges.

        SUHRHEINRICH, Circuit Judge.  Plaintiff-Appellant Cain Restaurant Company ("Cain")
appeals the district court's order and judgment denying its motion for summary judgment and
granting summary judgment for Carrols Corporation ("Carrols"). This case pertains to a matter of
contract interpretation in a lease agreement, namely whether the term "Premises" as used in a lease
agreement is defined to include buildings and improvements on the land, for purposes of valuating
the property. The district court ordered summary judgment for Carrols, finding that the term
"Premises" did not include buildings and improvements on the property. For the reasons that follow,
we **REVERSE** the district court order granting summary judgment for Carrols and **REMAND** the
case to the district court with instructions to enter summary judgment for Cain.

## I. Background

        Both Cain and Carrols are businesses engaged in the ownership and operation of Burger King
Restaurants. In 1992, the parties entered into lease agreements under which Cain leased Carrols

various Burger King restaurants, including Store No. 4188, a Burger King restaurant in Jackson, Michigan. The lease agreement pertaining to Store No. 4188 has a twenty-year term, and includes an option to purchase that can be exercised after ten years from the start of the lease.

On September 20, 2004, Carrols exercised the option for Store No. 4188. In so doing, Carrols informed Cain that under its interpretation of the lease terms, the purchase price was dependent on the value of the property alone, and not the buildings and improvements on the property. Carrols contended that "Premises" as used in the valuation provision of the lease did not include "Building," which the preamble to the lease defined as "all buildings, structures and other improvements whether now existing or hereafter erected thereon." Carrols further contended that because the purchase option gave Carrols the right to purchase the "Premises" free of all liens and encumbrances, it would acquire title to the land as well as the buildings and improvements upon exercise of the purchase option. So under its interpretation of lease provisions, Carrols would pay only the value of the land, without account for the value of buildings or other improvements, but would acquire title to both the land and the buildings.

On October 1, 2004, Cain responded by seeking a judicial declaration in Michigan state court that under the lease terms, the purchase price should be determined by the fair market value of the land and buildings and improvements on the property. Carrols removed the case to federal court and filed an answer to Cain's complaint while asserting two counterclaims. The first counterclaim sought declaratory and injunctive relief that Cain is contractually required to participate in the appraisal process. The second counterclaim sought a declaratory judgment that the fair market value of Store No. 4188 should be based on the value of the land only as measured against comparable properties, and not the value of the land and all buildings, structures, and improvements thereon; or

alternatively that the fair market value is based on the value of the land and buildings, but must be adjusted to account for Carrols's improvements to the property.

Both parties moved for summary judgment. On October 24, 2005, the magistrate judge filed a report and recommendation regarding the parties' motions for summary judgment, recommending that both parties' motions be denied. The magistrate judge found the term "Premises" ambiguous, and that the existence of a genuine issue of material fact precluded summary judgment.

On March 27, 2006, the district court issued an order: (1) rejecting the magistrate judge's finding that the term "Premises" is ambiguous; (2) denying Cain's motion for summary judgment and granting Carrols's motion for summary judgment; (3) dismissing Cain's complaint; and (4) entering judgment in favor of Carrols on its counterclaim against Cain, declaring that "the term 'Premises' means the premises located at 1023 N. West Avenue, Jackson, MI 49202 and being more particularly described on Schedule A." Cain timely appeals.

## II. Analysis

Cain appeals the district court's grant of summary judgment for Carrols. We review a district court's grant of summary judgment de novo. *Miller v. Admin. Office of the Courts*, 448 F.3d 887, 893 (6th Cir. 2006).

The parties agree that the substantive law of Michigan applies in this diversity case. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941); *Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 449 (6th Cir. 2000). We follow and apply Michigan law in accordance with the controlling decisions of the Supreme Court of Michigan. *Detroit Edison Co. v. NABCO, Inc.*, 35 F.3d 236, 239 (6th Cir. 1994).

Two provisions of the lease agreement form the basis for the disagreement in this case. The

first provision is the preamble, which contains the only definitions in the lease agreement for the terms "Premises" and "Building." The preamble provides:

> [Cain] . . . does hereby lease . . . the following described premises (hereinafter the "Premises") located at 1023 N. West Avenue, Jackson, MI 49202 and being more particularly described on Schedule A, . . . ; together with all buildings, structures and other improvements whether now existing or hereafter erected thereon (hereinafter collectively the "Building") and all easements, rights of way, licences and appurtenances thereto, and together with all rights and privileges in and about the Premises as may be necessary or convenient to the operations of [Carrols]'s business at the Premises for the term and upon the conditions hereinafter set forth.

Schedule A, in turn, is a metes and bounds description of the leased property.

The second provision of importance is the purchase option ("Purchase Option") in § 26, which contains the term "Premises," and provides that Carrols has the option of purchasing the "Premises" after ten years, and that its valuation will be the fair market value of the "Premises":

> (A) [Cain] hereby grants [Carrols] the option to purchase the Premises (the "Option") on the terms and conditions set forth herein. [Carrols] may give [Cain] written notice (the "Option Notice") of its exercise of the Option at any time during the Lease Term after the tenth (10th) anniversary of the Commencement Date (the "Option Period").
> . . . .
> (C) (i) The price which [Carrols] agrees to pay, and which [Cain] agrees to accept for the Premises (hereinafter, the "Purchase Price") shall be the "Fair Market Value" (as hereinafter defined) of the Premises as of the date [Carrols] [exercises the option]. Fair Market Value of the Premises shall mean the value of the Premises as compared with sales of similar or comparable properties.
> . . . .
> (D) The deed of conveyance shall be the usual bargain and sale deed . . . so as to convey to [Carrols] good, marketable and insurable title to the Premises in fee simple free of all "Liens" . . . .
> . . . .
> (F) All fixtures and articles of personal property attached or appurtenant to the Premises except those leased or otherwise financed by [Carrols] are included in the transaction contemplated hereby, without additional consideration. Such fixtures and articles shall include without limitation all plumbing, heating and lighting fixtures, to the extent actually installed or contained in or used in connection with the Premises.

Both parties claim that the term "Premises" as used in the lease agreement is unambiguous, but they take opposing positions as to its meaning. Cain argues that the term "Premises" includes the term "Building," relying on § 26, while Carrols argues that "Premises" excludes "Building," relying on the preamble. The different definitions of "Premises" as urged by the parties yield drastically different valuations of the property. Carrols offered $400,000 as the purchase price for the land only, while Cain estimated that the value of the land with the buildings and other improvements is worth approximately $1.3 to $1.6 million.

The district court found that the term "Premises" in the contract was not ambiguous, and held that the terms "Premises" and "Building" were separate terms, and that "Premises" did not include "Building." In its analysis, the district court relied on the definitions of "Premises" and a Building" in the preamble:

> [Cain]'s argument that the term "Premises" referred to both the land and all improvements located thereon, including the building, would mean that the Court must go beyond the definition set forth in the Lease. The Court notes that the terms "Premises" and "Building" are separated by a semicolon. A "'[s]emicolon' is defined as 'the punctuation mark (;) used to indicate a major division in a sentence where a more distinct separation is felt between clauses or items on a list than is indicated by a comma, as between two clauses of a compound sentence." *People v. Beardsley*, 688 N.W.2d 304, 306 (Mich. Ct. App. 2004) (citing Random House Webster's College Dictionary 116 (1997)). The semicolon means that the parties intended to more clearly divide the term "Premises" from the term "Building." If the Court were to interpret "Premises" to include "Building," the Court would have to add the term "include" or "including" to the definition, which the Court cannot do since the terms are expressly defined in the lease.

We disagree with the district court's conclusion that the term "Premises" unambiguously excludes buildings and improvements. As a preliminary matter, we decline to focus on punctuation, namely a semicolon in the preamble, as an indicator of the meaning of "Premises." Punctuation as an aid in the interpretation of a contractual provision is disfavored when better means of gauging the

-5-

intent of the parties exist. This Court has stated that "punctuation is not to be permitted to control meaning where the text is clear," and relevant only in the "case of ambiguity." *Travelers Indem. Co. v. Pray*, 204 F.2d 821, 824 (6th Cir. 1953). Indeed, the United States Supreme Court has long ago instructed that "[p]unctuation is a most fallible standard by which to interpret a writing; it may be resorted to when all other means fail." *Ewing's Lessee v. Burnet*, 36 U.S. 41, 54 (1837).

In our interpretation of the meaning of "Premises," we do not focus solely on the term's use in the preamble, in isolation from other lease provisions. Michigan rules of contract interpretation provide that "[c]onflicts between clauses should be harmonized, and a contract should not be interpreted so as to render it unreasonable." *South Macomb Disposal Auth. v. Am. Ins. Co.*, 572 N.W.2d 686, 695 (Mich. Ct. App. 1997). Rather than ascertaining the disputed term as it appears in the preamble, we "look[] to the contract as a *whole* and give[] meaning to *all* its terms." *Auto-Owners Ins. Co. v. Harrington*, 565 N.W.2d 839, 841 (1997) (emphases added). Thus, we cannot ignore the manner in which "Premises" is used in other parts of the lease. Michigan law of contract interpretation provides that "courts cannot simply ignore portions of a contract in order to avoid a finding of ambiguity or in order to declare an ambiguity. Instead, contracts must be construed so as to give effect to every word or phrase as far as practicable." *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003) (citations and quotation marks omitted).

In harmonizing the term "Premises" as used throughout the lease, we are also mindful that preambles in a contract generally serve to introduce the contract's subject matter rather than set forth the specific rights and obligations of the parties. *See* Black's Law Dictionary 1214 (8th ed. 2004) (defining "preamble" as "[a]n introductory statement . . . explaining the document's basis and objective"). In light of a preamble's purpose in a contract, we recognize that provisions in a

-6-

preamble, like recitals or other prefatory provisions of a contract, do not necessarily control over provisions in the operative sections. *Cf. In re GGSI Liquidation Inc.*, 351 B.R. 529, 565 (Bankr. N.D. Ill. 2006) ("Obligations and promises of parties in the operative portion of the contract prevail over a preliminary recital or preamble."); *Crowell v. Gould*, 96 F.2d 569, 573 (D.C. Cir. 1938) ("Where recitals contained in a contract are ambiguous and the operative part is free from doubt . . . the operative part must prevail."); *Berg v. Berg*, 275 N.W. 836, 842 (Minn. 1937) ("[I]n contracts where a preamble . . . is . . . declaratory of the purposes and intentions of the parties, it will be looked to in construing the contract . . . but in no sense will it be the basis of a legal and binding obligation of the parties.").

We now proceed to assess the term "Premises" as used not only in the preamble, but also in the other provisions of the lease. We recognize that if "Premises" in the preamble is read in isolation from the term's use in other lease provisions, the terms "Premises" and "Building" can be interpreted as being distinct and mutually exclusive. The preamble states, after all, that Carrols "lease[s] . . . the 'Premises' . . . *together with* . . . the 'Building.'" *See* Merriam-Webster's Collegiate Dictionary 1240 (10th ed. 1993) (defining "together with" as "in addition to" ). Three other provisions of the lease use the terms "Premises" and "Building" in conjunction with one another. First, § 6 of the lease concerns "repairs to the Building and Premises" and "warranties related to the Building and Premises." Second, § 7 concerns Carrol's right to make "alterations to the Premises and Building." And third, § 8 concerns Carrols's obligation to "keep the Premises and the Building insured."

We note, however, that the reading of "Premises" as adopted by the district court and urged by Carrols actually runs counter to the ordinary meaning of the word "premises." "Premises is defined by Merriam Webster's Collegiate Dictionary 920 (10th ed. 1997), as 'a tract of land *with the*

*buildings thereon.*'" *Minges Creek, L.L.C. v. Royal Ins. Co. of America*, 442 F.3d 953, 957 (6th Cir. 2006) (applying Michigan law) (emphasis added).

Reading the lease as a whole, we conclude that the term "Premises" as used in the lease comports with the word's ordinary meaning. A non-exhaustive survey of other lease provisions yields this conclusion.

First, the gross sales provision in the lease demands that "Premises" include buildings and improvements on the land. Section 3(B) of the lease provides that Carrols's monthly rent payments due under the lease are determined, in part, by the amount of "Gross Sales" "made at or from the Premises." Section 3(C)(iii) defines "Gross Sales" as "the amount of gross sales, receipts, revenues and charges of, in connection with and for all merchandise, services, or other operations rendered *at, in or from* the Premises." Under Carrols's reading of "Premises," "Gross Sales" includes only sales "at, in or from" the land–and does not include sales "at, in or from" the buildings on the land; sales from the Burger King, which operates in a building, would be exempted from gross sales. Even sales occurring in the parking lot would be exempted because a parking lot is an improvement to the land. *See* preamble (defining "Building" as "all buildings, structures and *other improvements*") (emphasis added). The only plausible reading of the gross sales provision requires that "Premises" include buildings and improvements on the land.

Second, the fixtures provision of the lease also demands that "Premises" include buildings and improvements. Section 7(D) provides that Carrols has the right to "remove[] from the Premises" within sixty days from the lease's termination:

> [a]ny and all movable or removable trade fixtures, equipment and personalty purchased by or belonging to [Carrols] . . . including but not limited to [Carrols]'s lighting fixtures, counters and counter tops, chairs, tables (including all public seating

components), decor items, fans, stoves, ovens, refrigerators, bars, walk-in cold storage boxes, restaurant and office equipment, software and other personal property . . . .

These items are commonly found inside of buildings, and are certainly found inside–not outside–of Burger King restaurants. "Premises" must include buildings on the property to allow for a rational reading of the fixtures provision.

Third, the lease section pertaining to permissible uses of the Premises requires the same understanding of "Premises." Section 5 provides that Carrols "may use and occupy the Premises for the purpose of operating a restaurant. The initial use of the Premises shall be for a 'Burger King' restaurant." Under Carrols's reading of "Premises," Carrols would only be permitted to use the land–and not the buildings–for the operation of the Burger King restaurant. Burger King restaurants do not operate in such fashion. Section 5 also provides that Carrols "shall not permit any operation . . . which will in any way violate any certificate of occupancy, if any, affecting the Premises." Because certificates of occupancy are not issued for undeveloped land, but only buildings, this provision reads illogically if "Premises" does not include buildings and improvements. *See* Black's Law Dictionary (8th ed. 2004) (defining "certificate of occupancy" as "[a] document indicating that a building complies with zoning and building ordinances").

Fourth, the provisions where "Building" and "Premises" appear together lend greater weight to an interpretation of "Premises" that includes buildings and improvements. One such provision is the maintenance and repair provision in § 6, which provides:

> Throughout the Lease Term, Lessee, at its sole cost and expense, except as otherwise provided herein, will take good care of the Premises and will keep the same in good order and condition and make all necessary repairs and replacements thereto, interior and exterior, ordinary and extraordinary, foreseen and unforeseen. The necessity for and adequacy of repairs to the Building and the Premises pursuant to this Article 6

shall be measured by a standard which is appropriate for buildings of similar construction and use.

Although the second sentence of this provision uses "Building" and "Premises" together, a common sense reading reveals that the terms are not mutually exclusive. The first sentence, referring only to "Premises" but not "Building," requires "interior and exterior" repairs. This sentence can be read logically only if the term "Premises" as used in this sentence includes "Building." Buildings have an interior and exterior, but the same cannot be said of undeveloped land. The term "Building" used here, although redundant, does not change this result. *See Michigan Tp. Participating Plan v. Pavolich*, 591 N.W.2d 325, 330 (Mich. Ct. App. 1998) (holding that "a finding of surplusage does not equate to a finding of ambiguity").

Section 7 of the lease provides another provision in which "Building" and "Premises" are used together. Specifically, § 7(A) gives Carrols the right to "make any alterations and additions to the Premises and the Building [that] [Carrols] shall deem necessary." But as discussed above, the fixtures provision in § 7(D) requires that "Premises" include buildings and improvements. The same applies to § 8, which requires Carrols to "keep the Premises and the Building insured . . . against loss or damage by fire or other casualty." Section 8(B)(i), however, requires Carrols to keep public liability insurance against claims "occurring on, *in* or about the Premises." The preposition "in" does not allow for a natural reading of this provision if "the Premises"–the object of the preposition "in"–cannot include buildings or improvements. *See* § 7(D) (allowing Carrols, upon termination of the lease to remove certain fixtures "*in*, at or upon the Premises").

So although the preamble provides that Carrols "lease[s] . . . the 'Premises' . . . together with . . . the 'Building,'" the lease read as a whole informs that the parties understood that "Premises"

includes buildings and improvements. This conclusion is consistent with Michigan's law of contracts, which directs courts to consider all of a contract's provisions in interpreting the rights of the contracting parties, rather than reading provisions in isolation:

> "The intention of the parties must be deduced from the entire agreement, not from any part or parts of it, and, where a contract has several stipulations, the intention of the contracting parties is not expressed by any single clause or stipulation, but by every part and provision in it, which must all be considered together, and so construed as to be consistent with every other part."

*Johnston v. Miller*, 40 N.W.2d 770, 771-72 (Mich. 1950).

Because "Premises" cannot reasonably be read to exclude buildings and improvements, this provision is unambiguous. *See Petovello v. Murray*, 362 N.W.2d 857 (Mich. Ct. App. 1984) (holding that a contract is ambiguous if the language is susceptible to two or more reasonable interpretations.) Thus, the district court's entry of summary judgment for Carrols was improper; rather, the district court should have granted Cain's motion for summary judgment.

Carrols offers extrinsic evidence to support its definition of "Premises," which we decline to consider.[1] Under Michigan law, we do not "have the right . . . to look to extrinsic testimony to determine [the parties'] intent when the words used by them are clear and unambiguous and have a definite meaning." *UAW-GM Human Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411, 414 (Mich. Ct. App. 1998) (citation omitted).

### III. Conclusion

For the reasons stated above, we **REVERSE** the district court order granting summary

---

[1]Specifically, Carrols argues that the parties' exchange of drafts of the lease agreement during its negotiation demonstrates that the valuation provision applies only to the land. It contends that the language in the valuation provision changed repeatedly throughout the negotiation of the lease, and the terms "Premises" and "Building" were at one point both included as part of the valuation clause.

judgment for Carrols and **REMAND** the case to the district court with instructions to enter summary judgment for Cain.

GRIFFIN, Circuit Judge, concurring in part and dissenting in part.

This is the rare, but classic case of an ambiguous contract. For this reason, I concur in the majority's holding that the district court erred in granting summary judgment in favor of Carrols, but respectfully dissent from the majority's conclusion that as a matter of law the contract unambiguously defines the term "Premises" to include the buildings and improvements made on the land. In my view, the lease agreement is ambiguous regarding the meaning of "Premises." Accordingly, I would not grant summary judgment in favor of either party, but would reverse and remand for trial.

Our task in interpreting a contract is to "give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003). Where a contract's language is unambiguous, a question of law is presented, and it is within our province to interpret its meaning. *Coates v. Bastian Bros., Inc.*, 741 N.W.2d 539, 543 (Mich. Ct. App. 2007). "However, if provisions of a contract irreconcilably conflict, the contractual language is ambiguous, and the ambiguous contractual language presents a question of fact to be decided by a jury." *Laurel Woods Apts. v. Roumayah*, 734 N.W.2d 217, 220 (Mich. Ct. App. 2007).

During the proceedings in this case, the contract has been interpreted three different ways by reasonable jurists. Magistrate Judge Donald A. Scheer ruled that the lease was internally ambiguous, reasoning that the definition of the term "Premises" contained in the preamble conflicts with its later usage in other portions of the agreement. District Judge Denise Page Hood held that the contract unambiguously favors Carrols' interpretation, concluding that the definition contained in the

-13-

preamble was controlling. With today's ruling, the majority now holds as a matter of law that the opposite is true and that the contract is unambiguous in favor of Cain's interpretation. These divergent interpretations underscore the reality that the contract is inherently ambiguous. Accordingly, I agree with the magistrate judge that "[n]either party has been able to state a convincing argument that a single definition of the term 'premises' can be assigned throughout the agreement without disregarding the specific language employed and/or offending logic" and that, as a result, this conflict presents "the very essence of 'ambiguity.'"

The majority begins its analysis by making a crucial observation, pointing out that the term "Premises" is defined in the agreement's preamble, and again in Schedule A, as referring solely to the land located at 1023 N. West Avenue in Jackson, separate and apart from any improvements made on the land. The preamble provides:

> Lessor . . . does hereby lease . . . the following described premises (hereinafter the "Premises") located at 1023 N. West Avenue, Jackson, MI 49202 and being located at 1023 N. West Avenue, Jackson, MI 49202 and being more particularly described on Schedule A . . .; together with all buildings, structures and other improvements whether now existing or hereafter erected thereon (hereinafter collectively the "Building") and all easements, rights of way, licenses and appurtenances thereto, and together with all rights and privileges in and about the Premises as may be necessary or convenient to the operations of Lessee's business at the Premises for the term and upon the conditions hereinafter set forth.

This definition, which incorporates the metes and bounds description found in Schedule A, is the lone definition of "Premises" contained in the agreement, and the district court held that it was controlling over other portions of the contract.

After conceding that, under the preamble's definition, "the terms 'Premises' and 'Building' can be interpreted as being distinct and mutually exclusive," the majority then explains why the

-14-

definition of "Premises" contained in the preamble should not control over the remaining portions of the contract and how the term is used throughout the agreement in a way inconsistent with the definition provided in the preamble.  I find this analysis persuasive and, as a consequence, I join in the majority's conclusion that the district court erred in granting summary judgment to Carrols.

Yet the inescapable fact remains that the agreement's sole definition of the term "Premises" refers only to the land located on West Avenue.  Although the majority ably explains how the term "Premises" is used in other sections of the agreement to refer to both the land and any improvements made thereon, it does not – and cannot – reconcile the definition found in the preamble with the later usage of the term.  "[I]f two provisions of the same contract irreconcilably conflict with each other, the language of the contract is ambiguous." *Klapp*, 663 N.W.2d at 453.

In my view, the appropriate response is not to rewrite the preamble's definition of the term "Premises" to accord with Merriam Webster's definition of the word, nor is it to hold that the use of the term in later provisions of the contract trumps its explicit definition contained in the preamble. In this case in which we apply the substantive law of Michigan, I would follow the Michigan Supreme Court's directive that "courts cannot simply ignore portions of a contract in order to avoid a finding of ambiguity," *Klapp*, 663 N.W.2d at 453.  Accordingly, I would hold that the present contract is ambiguous and thus remand the case for trial before the trier of fact.  Here, a genuine issue of material fact exists making summary judgment unwarranted for either party. FED. R. CIV. P. 56(c).

For these reasons, I respectfully concur in part, and dissent in part.