Filed 1/31/25  Lagoe v. Granite Bay Motorcycle Partners CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| DEAN LAGOE et al., | C100068 |
| Plaintiffs and Respondents, | (Super. Ct. No. SCV0049712) |
| v. | |
| GRANITE BAY MOTORCYCLE PARTNERS, INC. et al., | |
| Defendants and Appellants. | |

This appeal involves a narrow issue:  Does a written contract exist between plaintiffs Dean and Cynthia Lagoe and defendant Granite Bay Motorcycle Partners, Inc., doing business as Roseville Motorsports (Roseville Motorsports)?  Plaintiffs purchased an off-road vehicle from Roseville Motorsports in March 2021.  They signed a contract for the vehicle the same day.  The contract, in an introductory sentence, says:  "By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract."  It then, among other things, describes the vehicle

1

purchased, notes plaintiffs paid by check and credit card, and, in an arbitration provision, says either party could elect to resolve any dispute about the purchase through binding arbitration.

After Roseville Motorsports and another defendant attempted to invoke this arbitration provision, the trial court concluded that no written contract (and thus no arbitration provision) exists for plaintiffs' purchase. The court acknowledged that plaintiffs and Roseville Motorsports signed a document purporting to be a contract for the purchased vehicle. But it found that plaintiffs never agreed to the contract's terms because the contract's introductory paragraph says that plaintiffs chose "to buy the vehicle on credit under the agreements on the front and back of this contract," and because all parties agreed that plaintiffs did not in fact buy the vehicle on credit. On defendants' appeal, we reverse.

BACKGROUND

On March 23, 2021, plaintiffs purchased an off-road vehicle from Roseville Motorsports and completed a sales contract titled "Retail Installment Sale Contract— Simple Finance Charge (With Arbitration Provision)." The contract identifies Dean Lagoe as the buyer, Cynthia Lagoe as the co-buyer, and Roseville Motorsports as the seller. Its introductory paragraph says: "You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract." The contract then lists the vehicle purchased and a total sale price of $34,995, which covered the vehicle price, a processing charge, sales tax, vehicle fees, and an optional service provision. The contract adds, among other things, that plaintiffs paid this amount by check and credit card, with no amount financed through Roseville Motorsports.

One or both plaintiffs signed eight separate parts of the sales contract. One part that both signed states: "Agreement to Arbitrate: By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may

2

elect to resolve any dispute by neutral, binding arbitration and not by a court action."
The arbitration provision itself then says: "Any claim or dispute whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action."

About two years after purchasing the vehicle, plaintiffs sued Roseville Motorsports and the vehicle's manufacturer, Polaris Industries, Inc. (Polaris). Plaintiffs alleged that because of a design defect, the vehicle was unstable and unexpectedly rolled when Dean Lagoe was driving it. His left hand was crushed when the vehicle rolled and was later amputated. Plaintiffs alleged three causes of action and sought damages.

Roseville Motorsports and Polaris (together, defendants) denied plaintiffs' allegations. In their case management statements, both defendants sought a jury trial on plaintiffs' claims and indicated an unwillingness to participate in binding private arbitration. But a few months later, defendants together moved to compel arbitration of plaintiffs' claims based on the sales contract.

Plaintiffs opposed the motion. They argued that no arbitration agreement was formed, because the contract's introductory paragraph limits its terms to financed purchases and, in their view, this was not a financed purchase. They cited in support two things: first, the contract's introductory sentence saying they chose "to buy the vehicle on credit under the agreements on the front and back of this contract"; and second, declarations they submitted saying they paid by check and declined financing. Plaintiffs also opposed arbitration on other grounds, arguing, among other things, that the arbitration provision was unconscionable, defendants waived any right they had to

3

compel arbitration, and Polaris could not invoke the arbitration provision because it was not a party to the sales contract.

The trial court denied the motion to compel arbitration, agreeing with plaintiffs that no arbitration agreement exists. It noted that the sales contract's introductory paragraph says plaintiffs "choose to buy the vehicle on credit under the agreements on the front and back of this contract." It also noted that plaintiffs said they "did not in fact buy the vehicle on credit" and that defendants never disputed this statement. Based on those considerations, the court concluded that no arbitration agreement (and really, no contract) exists. In its words, the sales contract "in its introductory language does not correctly identify the terms of plaintiffs' purchase of the subject vehicle and the court cannot conclude plaintiffs assented to the 'agreements on the front and back of this contract.' "

Defendants timely appealed. (Code Civ. Proc., § 1294, subd. (a) [an order denying a petition to compel arbitration is appealable].)

DISCUSSION

I

*Who Decides Whether an Arbitration Agreement Exists?*

We begin with Polaris's argument that the trial court usurped the role of the arbitrator in concluding that no arbitration agreement exists. Quoting the arbitration provision here, Polaris asserts that this provision "delegates to the arbitrator all issues regarding 'the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute.' " It then argues that based on this provision, an arbitrator, not a court, should have resolved plaintiffs' claim that no arbitration agreement was formed. We reject its argument.

Courts have "consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." (*Henry Schein, Inc. v. Archer and White Sales, Inc.* (2019) 586 U.S. 63, 69.) But "before referring a dispute to an arbitrator, the court [must] determine[]

4

whether a valid arbitration agreement exists." (*Ibid.*; see *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.) In this case, the trial court followed this case law and found no arbitration agreement exists. Polaris can (and does) dispute this finding, as we cover next. But it cannot legitimately claim that an arbitrator, rather than a court, should have resolved this preliminary issue. This issue remains one for the court even when parties delegate threshold arbitrability questions to the arbitrator. (*Granite Rock Co. v. Teamsters* (2010) 561 U.S. 287, 299-300 [courts must resolve disputes about "the formation of the parties' arbitration agreement"]; *Ahlstrom v. DHI Mortgage Co., L.P.* (9th Cir. 2021) 21 F.4th 631, 635 ["parties cannot delegate issues of formation to the arbitrator"].)

In pushing for a different conclusion, Polaris attempts to reframe this issue. In its telling, the trial court did not really conclude that no arbitration agreement exists—though Polaris acknowledges that the court used those words. The court instead, Polaris suggests, implicitly found that an arbitration agreement exists but that a failure to fulfill a condition precedent—"namely, Plaintiffs' election to pay with credit instead of cash"— rendered the arbitration agreement unenforceable. But the court never found a failure to fulfill a condition precedent. Nor did it even mention any condition precedent. It instead found that the sales contract (along with its arbitration provision) lacked an element essential to the existence of a contract: consent. (Civ. Code, § 1550 [consent is an "essential to the existence of a contract"].) Again, considering the contract's introductory paragraph, the court said it could not "conclude plaintiffs assented to the 'agreements on the front and back of this contract.' " Whether right or wrong in reaching this conclusion, the trial court did not exceed its authority in considering this issue.

## II

### *Does an Arbitration Agreement Exist Here?*

We turn next to Polaris's argument that the trial court incorrectly concluded that no arbitration agreement exists. On this point, we agree with Polaris.

Before explaining our reasoning, we begin with the standard of review. In finding no arbitration agreement exists, the trial court focused on two undisputed things. First, the court cited the contract's introductory paragraph, which, again, says: "By signing this contract, you choose to buy the vehicle on credit under the agreements"—including the arbitration provision—"on the front and back of this contract." Second, the court noted that plaintiffs said they "did not in fact buy the vehicle on credit"—which neither defendant disputed. Focusing on these two considerations, the court concluded that plaintiffs never consented to the sales contract's terms and so no arbitration agreement exists. Because the trial court based its decision on undisputed matters, we will review its decision de novo. (*Sellers v. JustAnswer LLC* (2021) 73 Cal.App.5th 444, 462 ["where there is no dispute as to the material facts, 'the existence of a contract is a question [of law] for the court to decide' "].)

Applying de novo review here, we reject the trial court's conclusion that no arbitration agreement exists. We start with a comment about the method of plaintiffs' purchase. In two declarations, plaintiffs said they paid for "the full purchase price" by check, leading the court to write that plaintiffs "did not in fact buy the vehicle on credit." But the contract itself—which governs—says they paid the full purchase price by check *and* credit card. (Civ. Code, § 1638 ["The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity"].) And a purchase with a credit card is a purchase "on credit." (*Id.*, § 1747.02, subd. (a) [" 'Credit card' means any card, plate, coupon book, or other single credit device existing for the purpose of being used from time to time upon presentation to obtain money, property, labor, or services on credit"].) So plaintiffs appear to have paid the amount owed in part on credit.

But that said, no party covers this issue in the briefing. All parties instead agreed in the briefing, without explanation, that plaintiffs purchased the vehicle with "cash" and not on credit. Only at oral argument did one party, Polaris, offer an explanation. Its

6

counsel said that under the contract, a purchase "on credit" means only a purchase with dealer-arranged financing—that is, a purchase with financing arranged through Roseville Motorsports. No other party alleged any differently. For the remainder of this discussion, and consistent with the parties, we will assume the purchase here was not on credit. But even with that assumption, we still reject the trial court's conclusion.

Our decision follows from several contract principles. First, endorsing the trial court's reading would render the sales contract altogether inoperative, something courts typically eschew. In interpreting a contract, we must give it "such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." (Civ. Code, § 1643.) For the contract here, we have two offered interpretations. Under one reading, the parties entered into a contract covering plaintiffs' purchase of an off-road vehicle from Roseville Motorsports. Under another reading, which the trial court adopted, the parties entered into a contract for a sale that no one agreed to, with terms that no one need follow. The former reading is consistent with the rule favoring interpretations making contracts effective. The trial court's alternative reading is not.

We also find the trial court's reading inconsistent with the whole of the contract. (Civ. Code, § 1641 ["The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other"].) Considered alone, the contract's introductory paragraph suggests that the contract would cover a purchase with financing. But the parties still proceeded to complete and sign the contract, even though plaintiffs purchased without financing. And the contract's operative sections detail the terms of a purchase without financing, mirroring the parties' oral agreement. These sections list a total sale price of $34,995, which covered the vehicle price, a processing charge, sales tax, vehicle fees, and an optional service provision. They also show that no part of this amount would be financed through Roseville Motorsports. Plaintiffs admit they reviewed this part of the contract before

7

signing, finding "it accurately reflected the agreed upon price and that [they] had declined financing." All this tends to show that the parties intended to have the contract cover plaintiffs' purchase, even though plaintiffs purchased the vehicle without financing.

Reinforcing this finding, one or both plaintiffs signed the contract eight separate times—an odd thing to do had plaintiffs not intended to have the contract cover the purchase. One signed provision in the contract, moreover, specifically concerns arbitration. It says: "Agreement to Arbitrate: By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action." The referenced arbitration provision then says, relevant here, that it covers "[a]ny claim or dispute . . . between you and us or our employees, agents, successors or assigns, which arises out of or relates to . . . purchase or condition of this vehicle. . . ." Nothing in this provision—nor anything in any of the contract's other operative provisions—purports to limit the contract's scope to financed purchases. And while we appreciate that the contract's preamble focuses on financed purchases, not purchases generally, "we are also mindful that preambles in a contract generally serve to introduce the contract's subject matter rather than set forth the specific rights and obligations of the parties." (*Cain Restaurant Co. v. Carrols Corp.* (6th Cir. 2008) 273 Fed.Appx. 430, 434.) We thus "recognize that provisions in a preamble, like recitals or other prefatory provisions of a contract, do not necessarily control over provisions in the operative sections." (*Ibid.*; see *Carolina Beverage Corp. v. FIJI Water Co., LLC* (2024) 102 Cal.App.5th 977, 990 [an agreement's recitals cannot override otherwise unambiguous operative provisions]; *Wilder v. Wilder* (1955) 138 Cal.App.2d 152, 158 [finding specific provisions prevailed over an introductory clause].)

One final consideration cuts against the trial court's reading—the context surrounding the contract. (See Civ. Code, § 1647 ["A contract may be explained by reference to the circumstances under which it was made, and the matter to which it

8

relates"].) Plaintiffs purchased an off-road vehicle from Roseville Motorsports on March 23, 2021. They also signed a contract for the purchase of an off-road vehicle from Roseville Motorsports on March 23, 2021. Both the purchase and the contract concerned the same vehicle, the same sales price, and the same date. Considering this context, should we conclude that the contract covers the actual sale of the off-road vehicle to plaintiffs? Or should we conclude, as the trial court found, that the contract instead covers nothing, leaving no written contract for the vehicle purchase? We find the former reading more consistent with the surrounding context and the parties' evident intent to put their agreement in writing.

In sum, considering the context surrounding the contract, the whole of the contract, and the rule favoring interpretations making contracts effective, we reject the trial court's conclusion that plaintiffs never consented to the contract's terms. We again acknowledge that the contract's preamble suggests the contract would cover a financed purchase—which, again, we assume this was not. But the parties still signed and completed the contract. They still detailed monetary terms matching their oral agreement for a non-financed purchase. And plaintiffs still specifically agreed to an arbitration provision covering "[a]ny claim or dispute . . . between you and us or our employees, agents, successors or assigns, which arises out of or relates to . . . purchase or condition of this vehicle. . . ." All these considerations favor a finding that the parties intended this contract to cover plaintiffs' purchase. And while we accept that the preamble's language is imperfect as to this specific purchase, we decline to toss the whole agreement based on this language.

Favoring a different conclusion, plaintiffs raise several additional arguments unrelated to the preamble's language. They first argue that they never " 'carefully review[ed]' " the sales contract, so they should not be bound by it. But parties cannot escape a contract's terms simply by claiming they never carefully read it. (See *San Francisco Newspaper Printing Co. v. Superior Court* (1985) 170 Cal.App.3d 438, 443

9

["failing to read the contract is no excuse"].) Otherwise, all contracts would be "unenforceable at the whim of the [objecting] party." (*Ibid.*) Plaintiffs cite cases that they claim show otherwise, including one stating: "[I]f the one who signs the instrument is unaware of the contractual provisions, he cannot be said to have agreed to them." (*Metters v. Ralphs Grocery Co.* (2008) 161 Cal.App.4th 696, 702.) But context for that quote is important. Plaintiffs leave out that the quoted case focused on situations " 'when the writing does not appear to be a contract and the terms are not called to the attention of the recipient.' " (*Ibid.*) But no one has alleged that the writing here does not appear to be a contract. Nor could we say as much, for this writing plainly presents as a contract.

Plaintiffs cite another case that, in their telling, shows that a party can refute the existence of an agreement by declaring that " 'she did not recall the agreement and would not have signed it if she had been aware of it.' " (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 167.) But once more, plaintiffs omit critical context. The dispute in the quoted case concerned the authenticity of the parties' alleged agreement. (*Ibid.*) But plaintiffs never dispute the authenticity of the agreement here. They never claim, for instance, that the sales contract had been manipulated after they signed it, or that their signatures had been forged. They instead acknowledge the contract's authenticity. And although they claim they would not have signed the contract had they carefully read it, that, again, is no excuse.

Plaintiffs lastly argue that Polaris cannot challenge the trial court's conclusion, because the record lacks a reporter's transcript. In their view, "[w]ithout a reporter's transcript, defendants cannot show a lack of substantial evidence." But as covered already, we are reviewing the trial court's decision de novo, not for substantial evidence. And while the absence of a reporter's transcript may prevent a reviewing court from assessing error in some cases (see, e.g., *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295), we find it unnecessary here. That is "because we review the matter de novo, the trial court [showed] it relied only on the papers submitted, and none of the parties relies on

anything that occurred during that argument." (*Chodos v. Cole* (2012) 210 Cal.App.4th 692, 696 [finding transcript unnecessary]; see Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2023) ¶ 4:18 [a reporter's transcript "can be omitted entirely if resolution of the appeal does not require consideration of any part of the oral proceedings"].)

### III

*Remaining Issues*

We briefly cover Polaris's remaining arguments on appeal. It notes that plaintiffs resisted arbitration at the trial level for several additional reasons, including on the grounds that the arbitration agreement is unconscionable, defendants waived any right they had to compel arbitration, and Polaris—as a nonsignatory to the contract—could not invoke the arbitration provision. Polaris asks us to reject these alternative arguments—which the trial court never considered—and to direct the trial court to grant the motion to compel arbitration.

We decline to do so. It is true, as Polaris states, that appellate courts have at times resolved alternative arguments on appeal that the trial court never considered rather than remand to the trial court. (*Tornai v. CSAA Insurance Exchange* (2023) 98 Cal.App.5th 974, 983.) But we find that approach inappropriate here given the limited briefing on appeal. Polaris argues in its appellate briefing, for instance, that neither defendant waived the right to compel arbitration. But it never fairly describes the facts on this topic. It ignores, for example, that Roseville Motorsports issued extensive discovery before invoking the arbitration provision—conduct that can favor a finding of waiver. (*Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, 573, 586.) It ignores too, among other things, that in their case management statements, both defendants left blank the check box for indicating they were "willing to participate" in arbitration— conduct that also can favor a finding of waiver. (*Id.* at p. 586.) Roseville Motorsports, for its part, never fills these gaps, having joined Polaris's arguments without making any

11

separate arguments.  And plaintiffs offer only a single, short paragraph on waiver in their appellate briefing, adding that the trial court could consider this and other issues on remand if necessary.  Considering the limited briefing, we find it best to remand this matter to the trial court.

## DISPOSITION

The order denying defendants' motion to compel arbitration is reversed and the matter is remanded for further proceedings consistent with this opinion.  Defendants are entitled to recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

/s/
BOULWARE EURIE, J.

We concur:


/s/
EARL, P. J.


/s/
DUARTE, J.